UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:19-CR-196 |
| v. | ) | JUDGE GREER |
| | ) | |
| HARVEY LLOYD NAPIER | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Harvey Lloyd Napier, and the defendant's attorney, Nikki Himbebaugh, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

    a) Count One, that is, conspiracy to distribute fifty grams or more of methamphetamine, its salts, its isomers, and salts of its isomers, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A).

    The punishment for this offense is as follows: A minimum mandatory 10 years up to life imprisonment, a fine of up to $10,000,000.00, a minimum of five years up to life on supervised release, and a $100.00 mandatory assessment fee.

2. In consideration of the defendant's guilty plea(s), the United States agrees to move the Court at the time of sentencing to dismiss the remaining count(s) against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of

HLN

the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant was a member of a drug trafficking organization led by co-defendant Joshua Davis during the time frame set forth in the indictment.

On February 7, 2018, Defendant was arrested in Kingsport, Tennessee following a traffic stop. Defendant was in the driver of the vehicle and Archie Ramsey was in the passenger seat. Defendant was in possession of approximately 98 grams of crystal methamphetamine, $730 in US currency, and a Smith & Wesson 3913, 9mm pistol.

On April 4, 2018, Andrew Adams was arrested in Kingsport, Tennessee for possession of two grams of methamphetamine. When agents interviewed Adams, he stated that he found the methamphetamine in Defendant's bedroom. He stated that he lived with Defendant at 1525 Lynn Garden Dr., Kingsport, TN. Adams said that Defendant sold a lot of methamphetamine, and that he had seen Defendant with about a pound of methamphetamine on one occasion. He stated that Defendant made trips to Kentucky and North Carolina to get methamphetamine.

On August 27, 2018, the Kingsport Vice and Narcotics Unit conducted a controlled purchase of approximately one gram of methamphetamine from Defendant, utilizing a confidential informant.

On August 28, 2018, the Kingsport Vice and Narcotics Unit conducted a second controlled purchase of approximately one gram of methamphetamine from Defendant, utilizing a confidential informant.

On August 29, 2018, the Kingsport Vice and Narcotics Unit conducted a third controlled purchase of approximately one gram of methamphetamine from Defendant, utilizing a confidential informant.

2

During the course of the investigation, search warrants were obtained for text message content on cellular telephones utilized my members of the drug trafficking organization. In addition, several cellular telephones were seized from members of this organization. As a result, multiple text messages were obtained in which Defendant texted co-defendant Victor Ray to obtain methamphetamine. In particular, on September 21, 2018, Defendant contacted Ray to obtain an ounce of methamphetamine. Then, on September 28, 2018, Defendant contacted Ray to obtain a half-ounce of methamphetamine. Ray responded that he might need Defendant to go get drug money from Brittany Sage. Defendant sent a text message to Victor RAY stating that he was at IHop and could grab an ounce of methamphetamine and deliver it to a customer, then get money from Brittany Sage and bring it back to Ray. Defendant sent another message saying all he really needed was a half-ounce of methamphetamine to throw in with his to complete a deal. On October 1, 2018, Defendant texted Ray to obtain an ounce of methamphetamine. Ray sent a text to Defendant asking if he had given keys to Brittany Sage. Defendant sent a message back to Ray stating that he did, and he also gave her two and a half ounces of methamphetamine. On November 3, 2018, Defendant texted Ray and asked if they were going to meet up with co-defendant Joshua Davis. Defendant sent another text to Ray saying that customers were constantly calling his number looking for methamphetamine. Ray sent a text to Defendant saying that Davis was supposed to be on his way to them.

On November 21, 2018, Kirstin Mulkey was interviewed by agents, and stated that Defendant was supplied methamphetamine from Joshua Davis. Mulkey also said that Defendant sometimes got methamphetamine from Victor Ray.

On December 5, 2018, Defendant and his girlfriend, Destiny Coger, were arrested in Gate City, Virginia. Defendant was in possession of approximately 21 grams of methamphetamine and

HLN

3

digital scales. Defendant also possessed a Ruger pistol that was under the driver's seat and a revolver that was retrieved from the trunk.

On December 28, 2018, Victor Ray was interviewed at the Buncombe County Detention Center in Asheville, NC, following his arrest for possession of methamphetamine and numerous firearms. Ray stated that Defendant introduced him to Josh Davis as a supplier. Ray said that at first, he would give Defendant the money for methamphetamine and Defendant would take it to Josh Davis. He said that Defendant would then bring back the meth and give it to him.

On February 26, 2019, agents interviewed Defendant at the Duffield Regional Jail. Defendant said he started getting methamphetamine from Josh Davis sometime in early September 2018. Defendant stated that he got an ounce of methamphetamine from Davis twice a week from September 2018, until his arrest on December 5, 2018. Defendant also stated that he drove Davis to Atlanta, Georgia on two occasions to pick up methamphetamine and to Texas on one occasion to pick up methamphetamine. Defendant also said that on one occasion, he asked Victor Ray for an ounce of meth that he had arranged to sell. Ray asked him to get $2,500 from Brittany Sage and bring back to him when he came to get the ounce. Defendant stated the money he took from Sage and gave to Ray were proceeds from Sage selling meth for Ray.

On March 1, 2019, agents interviewed Mark Adam Burke. Burke said that Defendant went to Texas to get methamphetamine.

On April 2, 2019, agents interviewed Steven Eisenmenger at the Sullivan County Jail. Eisenmenger stated that Joshua Davis supplied Defendant with methamphetamine.

In a post-indictment interview of Joshua Davis, Davis stated that Defendant drove him to Georgia on one occasion to pick up methamphetamine. Davis stated that he picked up 10 pounds of methamphetamine on that trip.

HLN

4

The defendant admits that he conspired with at least one other person to distribute methamphetamine as charged in the indictment, and that he is conservatively responsible for the distribution of at least 50 grams but less than 150 grams of methamphetamine (actual). The parties agree, for purposes of sentencing, that U.S.S.G. § 2D1.1(b)(1) should apply.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

    b) the right to a speedy and public trial by jury;

    c) the right to assistance of counsel at trial;

    d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e) the right to confront and cross-examine witnesses against the defendant;

    f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

    a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

    b) The Court will impose special assessment fees as required by law; and

    c) The Court may order forfeiture as applicable and restitution as appropriate.

HLN

5

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

*HLN*

6

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

   a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

   b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

*HLN*

7

c)   If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10.   The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a)   The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b)   The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c)   The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be

HLN

8

sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the

*HLN*

9

defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

11.9.2020
Date

By: _____
J. GREGORY BOWMAN
Assistant United States Attorney

11-4-20
Date

_____
HARVEY LLOYD NAPIER
Defendant

11/4/20
Date

_____
NIKKI HIMEBAUGH
Attorney for the Defendant

10